UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIMETREE BAY TERMINALS, LLC d/b/a
OCEAN POINT TERMINALS,

            Petitioner,

v.

UNIPEC AMERICA, INC.,

            Respondent.

**PETITION TO CONFIRM ARBITRATION AWARD AND
SUPPORTING MEMORANDUM OF LAW**

Petitioner Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("OPT"), by and through its attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, hereby petitions the United States District Court for the Southern District of New York for an Order pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, to confirm the arbitration award rendered by a tribunal of the American Arbitration Association ("AAA")/International Centre for Dispute Resolution ("ICDR") on September 14, 2022 (the "Arbitration Award"), against Respondent Unipec America, Inc. ("Unipec"), and for entry of the Arbitration Award as a judgment of this Court.  As required by 9 U.S.C. § 13, attached to the Declaration of Dominic Pody, dated September 23, 2022 filed herewith (the "Pody Decl."), are true and correct copies of the parties' agreement to arbitrate (Pody Decl., Ex. A (excerpt of Terminal Lease Agreement, "TLA") at Schedule A § 5.9), the Arbitration Award (Pody Decl., Ex. B ("Award")), the appointments by the AAA of James Carter, Diana Marshall, and James Hosking as arbitrators (Pody Decl., Ex. C; *id*. Ex. D), and each written

1

extension of the time within which to make the Award (Pody Decl., Ex. E). No previous application has been made to confirm, modify, or correct the Arbitration Award.

## NATURE OF THE ACTION

1.   In September 2020, OPT filed a demand for arbitration with the AAA and sought to recover damages for breach of contract and associated declaratory relief from Unipec. Unipec subsequently filed counterclaims seeking declaratory relief, specific performance, and damages. The arbitration proceeding was styled *Limetree Bay Terminals, LLC. v. UNIPEC America, Inc.*, ICDR Case No. 01-20-0014-7261 (the "Arbitration"). Consistent with the parties' arbitration agreement (described more fully below), the parties selected a three-person tribunal of arbitrators (the "Tribunal"): James H. Carter, who was appointed as Chairperson on February 2, 2021, and Diana Marshall and James Hosking, who were appointed as Arbitrators on November 3, 2020. (Pody Decl., Ex. C; *id.* Ex. D.) After an eight-day hearing and two rounds of post-hearing briefing, the Tribunal issued the Arbitration Award on September 14, 2022, ruling in favor of OPT on nearly every disputed issue. Among other things, the Award (1) denied Unipec's request for a declaration that it could terminate the parties' underlying contract, and (2) awarded OPT $20,758,606.67 in damages and $153,296.23 in reimbursement for fees and expenses of the Tribunal and of the AAA/ICDR. (*See generally* Pody Decl., Ex. B.) OPT hereby seeks confirmation of the Arbitration Award.

## PARTIES

2.   Petitioner Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals, is a privately-held limited liability company organized under the laws of the U.S. Virgin Islands, with its principal place of business in St. Croix, U.S. Virgin Islands (1 Estate Hope, Christiansted, VI

Case 1:22-cv-08169-AKH   Document 1   Filed 09/23/22   Page 3 of 9

00820).  OPT is the operator of a world-class storage terminal located at Limetree Bay, St. Croix, U.S. Virgin Islands.

3. Respondent Unipec America, Inc. is a privately-held corporation organized under the laws of Delaware, with its principal place of business in Houston, Texas (3050 Post Oak Blvd, Houston, TX 77056).  It is a subsidiary of China International United Petroleum and Chemicals Co., Ltd.

## JURISDICTION AND VENUE

4. This court has diversity jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332: this is an action between citizens of different states and the amount in controversy in the Arbitration exceeded $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Respondent, and venue is proper here, because the Arbitration Award was "made" in New York, New York (Award at 50), where the arbitration hearings were held (*id*. ¶ 14) and where Respondent consented to arbitrate (TLA Sched. A § 5.9).  *See* 9 U.S.C. § 9; *Doctor's Assocs. v. Stuart,* 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction."); *NGC Network Asia, LLC v. PAC Pac. Grp. Int'l, Inc.*, No. 09 CIV 8684 PGG, 2010 WL 3701351, at *3 (S.D.N.Y. Sept. 20, 2010) ("[Respondent] agreed to arbitrate in New York and thus also consented to personal jurisdiction and venue in this district.").

## BACKGROUND

I. The Underlying Agreement and Dispute

6. On November 17, 2015, Unipec executed a Terminal Lease Agreement with Freepoint Commodities LLC ("Freepoint") for a ten-year term.  On March 31, 2016, Freepoint

3

assigned to OPT all of its rights and obligations under the TLA. (*See* Award at 1; *id*. ¶ 54.) Unipec consented to the assignment. On December 23, 2016, Unipec and OPT executed a First Amendment to the Terminal Lease Agreement. (*Id.* ¶ 54.) The TLA is in effect today and continues to bind the parties. (*See* Award ¶¶ 18, 279(b).)

7. The TLA is governed by New York law. (TLA Sched. A § 5.9.) In relevant part, it requires OPT to make available a certain amount of barrels for crude oil storage to Unipec. In exchange, Unipec must lease all crude oil storage capacity ("shell capacity") that OPT makes available to it, up to ten million barrels.

8. The TLA also contains an arbitration provision requiring the parties to arbitrate disputes. That provision states that:

> Any dispute, controversy or claim arising out of or relating to this Agreement shall be resolved by way of arbitration. The arbitration shall be conducted in New York, American Arbitration Association (AAA). Any dispute arising out of or in connection with this Agreement which cannot be resolved by negotiation shall be referred to and finally resolved by arbitration in accordance with the rules of the AAA at that time in force, which rules are deemed to be incorporated by reference into this clause and Agreement.[1]

9. On or around January 1, 2017, OPT began providing storage and related services to Unipec pursuant to the TLA. By August 2017, OPT was providing 10 million or more barrels of storage capacity to Unipec, and Unipec was contractually obligated to lease and pay for all of that capacity.

10. Beginning in 2019, Unipec started withholding monthly storage fees for three tanks on its lease. By September 2020, Unipec had withheld nearly $10 million in fees.

---

[1] TLA Schedule A § 5.9.

**II.     The Arbitration**

11.     On September 2, 2020, OPT filed a Demand for Arbitration against Unipec with the AAA.  (Award ¶ 6.)

12.     On October 8, 2020, Unipec filed Counterclaims, and on April 9, 2021, Unipec filed Amended Counterclaims.  (*Id*. ¶¶ 7, 11.)  LBT filed Answering Statements on October 28, 2020, April 23, 2021, and December 1, 2021.  (*Id*. ¶¶ 8, 11.)  On July 16, 2021, Unipec withdrew its prior request for specific performance.  (*Id*. ¶ 50.)

13.     The parties agreed that a three-person Tribunal would resolve the matter and that each party would appoint one member, who would together select the third member and Chairperson.  On November 3, 2020, the AAA/ICDR appointed Arbitrators James Hosking at OPT's request and Diana Marshall at Unipec's request.  (*See* Pody Decl., Ex. C at 2.)  On February 2, 2021, the AAA/ICDR appointed Arbitrator James Carter as the Tribunal's Chairperson.  (Pody Decl., Ex. D at 2.)

14.     In the course of discovery, the parties served and responded to dozens of requests for the production of documents and briefed and argued motions to compel the production of documents.

15.     After the completion of discovery, the parties submitted extensive pre-hearing briefing which included testimony from deposition witnesses and documentary evidence.

16.     An eight-day hearing was conducted in person before the Tribunal in New York, New York from March 21-25 and March 27-29, 2022.  At the hearing, 18 witnesses provided direct testimony and were subject to cross examination before the Tribunal.  Documentary evidence was submitted by each side.

17. The parties were represented by counsel, who had the opportunity to present opening statements, examine witnesses, introduce documentary evidence, and object to the admission of evidence.

18. Following the hearing, the parties submitted two rounds of voluminous post-hearing briefing, at which point the Tribunal formally closed the evidentiary stage of the proceedings.

### III. The Arbitration Award

19. On September 14, 2022, after reviewing and considering the evidence presented, the witness testimonies, and the parties' briefs and arguments, the Tribunal issued a thorough and well-reasoned Arbitration Award of fifty single-spaced pages addressing the issues raised by the parties. In short, the Tribunal found for OPT on almost every issue, including that OPT had "prevailed in defeating Unipec's primary claim of a right to terminate the TLA and ha[d] prevailed substantially in its claims for unpaid storage fees." (Award ¶ 277.)

20. The Tribunal denied Unipec's request for a declaration that it could terminate the TLA. (*Id.* ¶ 279(b).) It reasoned, among other things, that OPT did not breach the TLA in any respect. (*See id.* ¶¶ 121, 131, 140-141, 157-61, 168, 172.)

21. Because OPT had fully complied with the TLA and conferred "very substantial benefits" in doing so, the Tribunal further held that Unipec had breached the TLA by failing to pay storage fees that were due and payable, and awarded OPT damages in the amount of $20,758,606.67. (*Id.* ¶¶ 179, 253.) It thus ordered Unipec to pay that amount within 30 days from transmittal of the Award to the parties, meaning by October 14, 2022. (*Id.* ¶ 279(d).)

22. The Tribunal also held that Unipec should pay 75%, and OPT should pay only 25%, of the $46,408.14 in arbitration fees and expenses and the $525,460.40 in Tribunal compensation

and expenses incurred. (Award ¶¶ 277-278.) It thus ordered Unipec to reimburse OPT the sum of $153,296.23, representing the amount of fees and expenses OPT paid in excess of its 25% allocation. (*Id.* ¶ 279(e).)

23. Finally, the Tribunal issued the following declarations:

    a. "Under the TLA, the Operator must aspire to meet the highest industry standards but, at a very minimum, must comply with standards equal to those of other comparable first-class operators of terminal facilities." (*Id.* ¶ 279(a).)

    b. "Under the TLA, [OPT] has the exclusive, unilateral right to determine which tanks shown on Schedule F, as it may be amended from time-to-time by the agreement of the Parties, shall be utilized for the storage of Product owned by [Unipec], and [OPT] must give [Unipec] advance notice of such determination with respect to each cargo of Product delivered to the Terminal. However, once initially stored, [OPT] may not then move or transfer [Unipec's] stored Product to any other tank, whether it is on Schedule F or otherwise, without [Unipec's] prior consent." (*Id.* ¶ 279(c).)

## **MEMORANDUM OF LAW**

24. The Federal Arbitration Act provides that "within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)); *see also Doctor's Assocs., Inc. v. Cassarotto,* 517 U.S. 681 (1996) (stating the purpose of the Federal Arbitration Act is to ensure that private agreements to arbitrate are enforced). Vacatur is allowed in only very limited circumstances, none of which apply here. *See Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011).

25. Here, the Tribunal considered all evidence that either party wished to submit, rejected the vast majority of Unipec's claims, and granted OPT's claims for damages after a searching consideration of the merits of the dispute. There are no grounds supporting vacatur, modification, or correcting of the Arbitration Award as enumerated in 9 U.S.C. §§ 10-11, and Unipec has not made any motion in court to vacate, modify, or correct the Arbitration Award. The Award is final and binding on the parties. It was made in accordance with the parties' contracts, and is proper in all respects. Accordingly, the Arbitration Award should be confirmed so that judgment may be entered.

## PRAYER FOR RELIEF

OPT prays that:

26. The Court issue an order confirming the Arbitration Award issued by the Tribunal, as authorized by 9 U.S.C. § 9;

27. The Court enter a judgment that conforms to the Arbitration Award;

28. The Court grant OPT declaratory relief as provided in the Arbitration Award;

29. The Court grant OPT monetary relief in an amount equal to the sum of $20,758,606.67, as provided in the Arbitration Award;

30. The Court order Unipec to reimburse OPT the sum of $153,296.23 for arbitration fees, expenses, and compensation incurred by OPT, as provided in the Arbitration Award;

31. The Court grant OPT post-judgment interest pursuant to 28 U.S.C. § 1961 on the entire amount of the judgment from the date the Clerk enters judgment until the judgment is paid; and

32. The Court award OPT any other relief that the Court deems just and proper.

**CONCLUSION**

33.     For the foregoing reasons, OPT respectfully requests that this Court confirm the Arbitration Award and enter it as a Judgment of this Court, and for such other and further relief as is just and appropriate.

Dated: September 23, 2022

By: /s/ *Dominic Pody*

**QUINN EMANUEL URQUHART &
& SULLIVAN, LLP**

Mark McNeill
Silpa Maruri
Dominic Pody
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
Fax: (212) 849-7100
markmcneill@quinnemanuel.com
silpamaruri@quinnemanuel.com
dominicpody@quinnemanuel.com

Christopher D. Porter (*pro hac vice* forthcoming)
Pennzoil Place
711 Louisiana St., Suite 500
Houston, Texas 77002
Telephone: 713.221.7000
chrisporter@quinnemanuel.com

*Attorneys for Petitioner Limetree Bay Terminals, LLC*