Upon written notice from Customer to Freepoint of Customer's desire to sublease a portion of its committed Tank capacity, Freepoint shall have the right to market any reserved Customer Tank capacity, for a period of three weeks, and to retain fifty percent (50%) of the positive difference, if any, between the sublease rate and the Storage Fee payable by Customer in respect of such volumes. If Freepoint is not involved in active negotiation with a third party to sublease such Customer Tank capacity after the said three-week period, Customer shall be permitted to market any reserved Customer Tank capacity to any third party. In the event Customer markets any reserved Customer Tank capacity pursuant to this Section 5.7, Customer acknowledges it shall be required to obtain Freepoint's consent to such sublease, such consent not to be unreasonably withheld and that any such sublease may not itself be a violation of, or cause Freepoint to be in violation of, any Law.

Consent to sale, assignment or transfer shall not relieve one party from any of its duties or obligations under this Agreement, unless otherwise specifically stated in the written consent. Subject to the foregoing, this Agreement shall bind and inure to the benefit of the permitted successors, assigns and transferees of the Parties.

Notwithstanding the forgoing, this Section 5.7 shall not apply to either party, with respect to any corporate reorganizations, mergers, equity or asset sales, or consolidations, and this Agreement shall bind and inure to the benefit of such successor(s) of the Parties.

5.8 Conflict of Interest. Neither Party will pay any commission, fee, or rebate to an employee of the other Party, or favor an employee of the other Party with any gift or entertainment of significant value.

5.9 Governing Law. This Agreement shall be governed by the State of New York without giving effect to principles of conflicts of law. Any dispute, controversy or claim arising out of or relating to this Agreement shall be resolved by way of arbitration. The arbitration shall be conducted in New York, American Arbitration Association (AAA). Any dispute arising out of or in connection with this Agreement which cannot be resolved by negotiation shall be referred to and finally resolved by arbitration in accordance with the rules of the AAA at that time in force, which rules are deemed to be incorporated by reference into this clause and Agreement.

5.10 Counterparts. This Agreement may be executed in one or more counterparts, each of which, when delivered, will be deemed an original and part of one and the same document.

5.11 Entire Agreement. This Agreement represents the entire agreement of the Parties with respect to the matters addressed herein. The Parties may revise or supplement this Agreement through negotiation, including with respect to matters not addressed herein as of the date of this Agreement.

5.12 Survival. The Parties acknowledge and agree that any rights of a Party arising under this Agreement prior to its termination or expiration, including but not limited to a right to indemnification with respect to any matter, any payment obligations and the limitation of liability set forth herein, shall survive the termination or expiration of this Agreement.

5.13 Miscellaneous. References in this Agreement to "days," "months," or "years" will mean calendar days, months, and years unless otherwise indicated. Unless expressly provided otherwise, the word "including" does not limit the preceding words or terms, and shall have the same meaning as "including but not limited to". All section titles and headings in this Agreement are merely for convenience, and will not limit in any way the interpretation of this Agreement. Neither this Agreement nor the Parties' performance hereunder shall be deemed to have created a joint venture or partnership between the Parties.

—End of Schedule "A"—